1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>PERCY LOVE, III<br><br>             Defendant. | No.  2:13-cr-306-TLN-DAD<br><br><br>**MEMORANDUM AND ORDER** |

17

18

19

20

21

22

23

24

25

26

27

28

       Defendant Percy Love, III, representing himself in this matter, was convicted by jury trial on December 23, 2014, on all 5 counts in the superseding indictment.  Defendant has now moved for acquittal and for a new trial.  (ECF Nos. 175, 176.)  The United States (hereinafter the "Government") has filed oppositions to each of those motions, and Defendant filed a reply and an addendum to that reply.  (ECF Nos. 210, 211, 221, 222.)  On September 24, 2015, the Court heard oral argument on Defendant's motions for acquittal and for a new trial.  Following that hearing, Defendant submitted rap sheets containing a victim/witness' criminal history and the Government submitted a surreply.[1]  (ECF No. 224.)  Defendant submitted a response to that surreply.  (ECF No. 228.)  For the reasons stated below, Defendant's motion for acquittal is DENIED.  Defendant's motion for a new trial, relative to Counts 1 through 4, is DENIED;

---

[1] These rap sheets were not filed on the docket.

1

relative to Count 5, the motion for a new trial is GRANTED.

## STANDARD OF LAW

"The test for determining whether to grant a motion for judgment of acquittal under [Federal Rule of Criminal Procedure] 29(c) is whether at the time of the motion, viewing the evidence in a light favorable to the Government, there was relevant evidence from which the jury could reasonably find the accused guilty beyond a reasonable doubt of each element of the crime charged." *United States v. Dior*, 671 F.2d 351, 357 (9th Cir. 1982) (citing *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977)).  The court must determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir. 1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

Under Federal Rule of Criminal Procedure 33, upon the defendant's motion, a court may vacate any judgment and grant a new trial if the interest of justice so requires.  Fed. R. Crim. P. 33(a).  "[A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal.' [*U.S. v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1211 (9th Cir. 1992)].  The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *U.S. v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000).  However, a motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984).

## ANALYSIS

The Court does not include in this Order every argument raised within Defendant's voluminous briefing, but those that in the Court's estimation are most relevant to acquittal or a new trial.

### I.      Counts 1 – 4

Counts 1, 2, and 4 charged sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a).  Count 3 charged sex trafficking of a minor, in violation of 18 U.S.C. §

1591(a).  The named victims in Counts 1 through 4 testified at trial, Defendant cross-examined each victim, and Defendant also testified.  The Court notes the following items of evidence.

With respect to Count 1, Victim K.L. testified that Defendant beat her on multiple occasions while she was working as a prostitute for him, including a severe beating in Rancho Cordova.  (Gov.'t Opp., ECF No. 210, Ex. 7.)  Other evidence included text messages between K.L. and Defendant demonstrating that Defendant arranged K.L.'s "dates", collected the money from those dates, and controlled aspects of her life such as when she could eat and sleep; there were also photographs of K.L.'s injuries.  (Gov.'t Opp., ECF No. 210 at 4; Ex.'s 4 & 6.)

With respect to Count 2, Victim F.W. testified that the Defendant physically abused her in Milpitas after she refused to travel to Nevada with him to work as a prostitute.  Witness R.C., a prostitute working for Defendant, testified that she was present when the abuse occurred and corroborated F.W.'s testimony.  (Gov.'t Opp., ECF No. 211, Ex. 3.)

With respect to Count 3, Victim T.V. testified that between 2006 and 2009, Defendant trafficked her for commercial gain; that when Defendant first began pimping T.V. she was only 14 years old; and that Defendant learned of T.V.'s age during an incident in Fairfield, when he asked T.V. to rent a room to conduct dates and T.V. indicated she was too young to rent a room.  Witness R.C. testified she believed T.V. was a minor based upon her appearance, and had a conversation with Defendant about T.V.'s inability to rent a hotel room because T.V. was too young.  (Gov.'t Opp., ECF No. 210, Ex.'s 1 & 2.)

With respect to Count 4, L.C. testified that Defendant beat her severely on numerous occasions while she was working as a prostitute for him.   Those beatings included using a butter knife to cut off her hair and to push it into her vagina, abuse while L.C. was pregnant, and strangulation.  Photographs were admitted of L.C.'s injuries.  (Gov.'t Opp., ECF No. 210, Ex.'s 8 & 9.)

The Court notes: with respect to Counts 1, 2, and 4, Defendant himself testified that Victims L.C., F.W., and K.L. engaged in prostitution, gave him money from this prostitution, and that he physically abused all three victims. (Def.'s Test., ECF No. 197 at 11:10–24; 17:2–22;

18:1–14; 33:2–19; 34:9–24 & 35:1–25 & 36:1; 42:3–17; 46:21–25 & 47:1–4.)  Defendant seeks to provide context for this abuse, such as the fact that he was romantically involved with K.L. and L.C., and that the beating he perpetrated on F.W. did not occur immediately prior to F.W. engaging in a commercial sex act.  Notwithstanding Defendant's testimony, the jury found the elements for the charges in Counts 1, 2, and 4 to be met, and there was sufficient evidence for that finding.

With respect to Count 3, Defendant testified that he was incarcerated from February 2005 through July 2007, and thus could not have met Victim T.V. in 2006.  (Def.'s Test., ECF No. 197 at 50:2–13.)[2]  Defendant testified that he did not learn T.V.'s age until some point in 2009.  (Def.'s Test., ECF No. 197 at 51:5–6.)  Defendant also elicited testimony on cross examination of T.V. that she had provided false identification to law enforcement.  However, Defendant testified that T.V. engaged in prostitution and gave him money from that prostitution.  (Def.'s Test., ECF No. 197 at 51:9–10.)  The testimony cited *supra*, from T.V. and from R.C., conflicts with Defendant's testimony regarding his awareness of T.V.'s age.  Defendant's stated time in incarceration, from between February 2005 and July 2007, does not cover the time period charged for Count 3, roughly November 2006 through December 2009.  Therefore, the Court finds there was sufficient evidence to support a conviction for Count 3.

In consideration of the evidence in full, including the testimonial evidence cited fully in the parties' moving papers, the Court does not find that the evidence preponderates heavily against the verdict, or that a rational trier of fact could not have found the requisite elements beyond a reasonable doubt.  *Rush*, 749 F.2d at 1371; *Shirley*, 884 F.2d at 1134.  Therefore, Defendant's motion for acquittal and motion for a new trial, relative to Counts 1 through 4, are hereby DENIED.

/ / /

/ / /

---

[2] The transcript reflects that Defendant refreshed his recollection with a document, and thereafter stated the specific date of his incarceration as February 16, 2005 through July 2, 2007.  If those dates of incarceration are correct, it appears that Defendant could not have committed offense conduct during that portion of the charged time period.  However, Defendant did not dispute that he in fact did traffic T.V. for commercial gain after his release.

## II.     Count 5

Count 5 charged attempted sex trafficking of a minor, Victim L.B., in violation of 18 U.S.C. §§ 1591(a), 1594.  Relative to Count 5, Defendant argues that his rights under the Confrontation Clause of the Sixth Amendment were violated because he was unable to confront L.B.  The primary evidence introduced for Count 5 was recorded telephone calls between Defendant and L.B., which took place on May 31, 2009, and June 5, 2009.  During the recorded telephone calls, unbeknownst to Defendant, L.B. was working for the Government at the direction of testifying witness Detective Stigerts.

In those calls L.B. indicated she was going to run way from juvenile hall and that she wanted to stay out of state until she turned 18.  L.B. told Defendant she wanted to prostitute herself for him while stating she was, "ready to sell this pussy."  They talked about the prostitution business, and Defendant indicated he was eager to have L.B. work for him because he did not have any "snow," meaning white prostitutes.  They had a discussion about another underage prostitute who testified at trial, F.T.  L.B. then indicated she had run way from a youth detention center and wanted Defendant to pick her up so she could work for him as a prostitute. Defendant drove from San Francisco to meet with L.B.  (Gov.'t Opp., ECF No. 210 at 9; Gov.'t Trial Ex.'s 71, 71a.)  On June 5, 2009, Defendant was arrested.

On cross-examination, Defendant attempted to question Detective Stigerts about the circumstances in which he had come to know L.B., and which statements L.B. had made to Stigerts about her and Defendant's relationship, such as whether Defendant was her pimp.  The Court sustained some of the objections by the Government on this line of questioning on hearsay and relevance grounds.  (Stigerts' Test., ECF No. 196 at 35:1–25; 36:1–5.)

The Court then granted Defendant's request to meet outside the presence of the jury. Defendant represented to the Court that L.B. was arrested as part of a prostitution ring in February, 2009, in which Detective Stigerts was the investigator; initially, L.B. did not tell Stigerts the name of her pimp, but finally stated to him that Defendant had been her pimp since August, 2008 and that Defendant had beaten her.  Defendant stated this account given by L.B. to

Stigerts was false.  Defendant stated L.B.'s false statements led Stigerts to initiate the recorded telephone calls at issue here.   (Stigerts' Test., ECF No. 196 at 36:20–25; 37:1–16.)  Defendant expressed his frustration that the jurors were left with the false impression that he was L.B.'s pimp.  Cross-examination resumed for a brief period.  Defendant questioned Stigerts: "did [L.B.] tell you anything that she said, that she said that she had been around me more than once."  The Court sustained the Government's objection on hearsay grounds, and then Defendant's cross-examination of Stigerts ended, whereupon it was clear to the Court that Defendant was frustrated by his inability to attack the veracity of L.B.'s statements to Detective Stigerts.  (Stigerts' Test., ECF No. 196 at 42:25; 43:1–5.)

Defendant now argues that he had the right to confront L.B. under the Confrontation Clause of the Sixth Amendment.  The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004).

The "threshold determination" the Court must make is whether L.B.'s statements were "testimonial" in nature. *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004).  "Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause … It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

"Various formulations of [a] core class of 'testimonial' statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford*, 541 U.S. at 51–52 (internal citations omitted).  *See also United States v. Saget,* 377 F.3d 223, 228 (2d Cir. 2004) ("*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial").

In this case, while working as an agent for law enforcement, L.B. discussed with Defendant the prospect of engaging in prostitution.  L.B. knew her statements were being recorded.  L.B.'s statements, such as the fact that she was a minor, helped to establish the elements of the charge, including whether Defendant knew L.B. was a minor at the time he intended to traffic her.  Therefore, the Court finds that L.B.'s statements were made under circumstances which would lead her to believe that they would be available for use at a later trial. *Crawford*, 541 U.S. at 51–52.

The Government also argues L.B.'s statements were not offered for the truth of the matter asserted.  *See Cromer*, 389 F.3d at 676 (citations omitted) ("The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. … [When] the statements [are] not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply").  The Government argues Defendant's statements on the phone calls were admitted as admissions of a party opponent, under Fed. R. Evid. 801(d)(2)(A), and L.B.'s statements were included for context because otherwise the conversation would not have made sense.  On this point, the Government cites *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985) (explaining that recorded conversations may be admitted, including the contextual statements of a government informant, because they are not admitted for their truth but to help the jury understand the recording).  The Court notes that in *Whitman*, the jury was instructed that they were to consider the informant's statements only for context.  However, in the instant case, the jurors were not given a limiting instruction telling them that they could only consider L.B.'s statements for context.  The informant in *Whitman* also testified at a later point in trial and was cross-examined by the defense, which did not occur here.  *Id.*

7

It is likely that the the jury relied upon L.B.'s statements for the truth of the matter asserted: that she had previously prostituted herself for Defendant's benefit while she was a minor, that Defendant had beaten her, that she was a minor, that Defendant attempted to obtain or transport her for prostitution, and that Defendant knew she was a minor.  In the Government's rebuttal argument, it stressed to the jury that the calls made it clear that L.B. wanted to engage in prostitution, which was an exciting prospect to Defendant.  (Gov.'t Rebut., ECF No. 201 at 18:18–25.)  It was also the Government's point, during the meeting outside the presence of the jury, that Stigerts had not provided any "bolstering or credibility information [of L.B.] in his direct testimony in the set up of the recordings. The recordings have the content. The jury can evaluate the content of the calls."  (Stigert's Test., ECF No. 196 at 38:6–9.)  The Government's argument clearly told the jurors that they could consider the content of L.B.'s statements to establish that the minor L.B. wanted to engage in prostitution for Defendant's benefit and that Defendant was eager for her to do so.  Because L.B.'s statements were likely relied upon by the jury for their truth, which went to the elements of the charge, such statements were not merely context, and thus are not exempt from the Confrontation Clause.

The Court notes three additional points.  First, "[a] violation of the [Defendant's] constitutional right of confrontation compels reversal unless the [Defendant] can be said to have waived the right."  *United States v. Provencio*, 554 F.2d 361, 363 (9th Cir. 1977).  The record reflects that Defendant did not waive that right.  (Stigerts' Test., ECF No. 196 at 37:10–16; 38:23–25; 39:1–4.)  While Defendant's waiver may have been somewhat ill-phrased and clumsy, it is clear during the discussion that took place outside the presence of the jury that Defendant's primary complaints were L.B. lied to Detective Stigerts, Defendant had no way to attack her credibility due to L.B.'s unavailability, and the jury was now left with her uncontradicted statements to Detective Stigerts.

Second, the fact that Defendant did not make a request to subpoena L.B. does not preclude application of the Confrontation Clause.  The "Confrontation Clause imposes a burden on the

prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324–25 (2009).

Third, on review of the record, the Court erroneously advised Defendant that he was unable to attack L.B.'s credibility by questioning Detective Stigerts. The Court's ruling was in error. *See* Fed. R. Evid. 806. Also, the Court sustained several objections by the Government in which it appears Defendant was attempting to attack L.B.'s credibility. (Stigerts' Test., ECF No. 196 at 35:1–25; 36:1–5; 38:20–21; 39:9–16.)

Finally, the Court notes that the primary evidence offered by the Government for Count 5 was the recorded telephone calls at issue here; the calls were not corroborative or otherwise ancillary to other evidence offered for Count 5. The jury requested the calls to be replayed during their deliberation, shortly before delivering a verdict. On review of the aforementioned portions of the record, the Court views the manner in which the calls were introduced (with no guidance to the jury as to how L.B.'s statements should be taken), the fact that Defendant was advised that he could not attack L.B.'s credibility, and the fact that L.B. was not available for cross-examination, to constitute procedural error. Therefore, the interests of justice compel the vacating of the conviction for Count 5. As to Count 5, the motion for a new trial is GRANTED. The motion for acquittal is DENIED.

### III.   Other Issues

A. Double Jeopardy

With respect to Count 4, sex trafficking against Victim L.C., Defendant argues that the double jeopardy doctrine precludes prosecution in this case. Defendant states that following a physical altercation with L.C. in 2010, he was arrested and sentenced by Contra Costa County Superior Court, for a violation of California Penal Code § 273.5 (corporal injury of a spouse/cohabitant).[3]

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after

---

[3] The draft presentence report in this matter states Defendant was sentenced in March, 2011 for corporal injury to a spouse/cohabitant and for false imprisonment. (ECF No. 214 ¶ 108.)

conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989).

Here, the first type does not apply because there was a prior conviction, not acquittal. The second type does not apply because a violation of California Penal Code § 273.5 requires proof of different elements than for a violation for sex trafficking pursuant to 18 U.S.C. § 1591(a). Penal Code § 273.5 is violated when a defendant "willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition." 2007 Cal. Legis. Serv. Ch. 582 (A.B. 289) (West).

With respect to the third type, Defendant does not establish that the domestic violence offense at issue for his Contra Costa County sentence is the same offense being punished here: sex trafficking occurring no later than September 14, 2008, through on or about June 22, 2013, which involved evidence of multiple instances of physical abuse connected to a pattern of pimping L.C. for commercial gain. Therefore, Defendant has not established a basis for the application of the double jeopardy doctrine.

B. Criminal history of witnesses

Defendant states that the rap sheets of victims and/or witnesses testifying for the Government were provided to him prior to their testimony, but the names and other identifying information were redacted. He states he was unable to impeach witnesses based on their criminal history, because he could not tell which criminal history corresponded to which witness. Following the September 24, 2015, hearing on the instant motions, Defendant provided the Court with what appears to be the rap sheets of a victim/witness that were provided to him in discovery. The Court is not able to identify with total certainty which victim/witness these records correspond to, which may be Defendant's point.

The Government responds that it gave the Defendant redacted rap sheets out of concern for the privacy rights of the victims and their personal identifying information. The Government states it assumed other identifiers in the rap sheets, such as physical descriptions, would be

adequate to identify the victims, together with the fact that many of the arrests and/or convictions described therein were more fully elaborated by the police reports provided in discovery. The Government states it does not recall receiving any requests from Defendant to clarify the redactions.

"When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. [Courts] do not, however, automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict … A finding of materiality of the evidence is required under [*Brady v. Maryland*, 373 U.S. 83 (1963)]. A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 153–54 (1972) (internal citations omitted). "A defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case." *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988).

The Court does not find that the redaction of witnesses' names and/or other identifying information from the criminal histories provided to Defendant by the Government prevented Defendant from impeaching witnesses so as to have a reasonable likelihood of affecting the judgment of the jury. Defendant, as shown in his testimony and his cross-examination of the victims, demonstrated an intimate familiarity with the victims given his ongoing interaction with them as as prostitutes working for him. Independently of said victims/witnesses' credibility, Defendant does not identify a false statement made by these victims at trial which would undermine the weight of the evidence in full. In fact, much of the evidence against the Defendant consisted of text messages which he exchanged with several of the victims and/or testifying witnesses which expressly stated the locations, hotels, exchange of money, posting of pictures on the internet, prices, and other evidence in which Defendant acknowledges he was a violent, controlling pimp.

The Court also finds that Defendant has not identified a particular item of criminal history

that, if introduced into evidence, would have a likelihood of affecting the judgment of the jury. For example, the rap sheet of the victim/witness which Defendant provided to the Court following the September 24, 2015, hearing, predominantly lists arrests and/or convictions for prostitution, disorderly conduct, drug possession, theft, and showing false identification to law enforcement. However, all of the victims/witnesses in Counts 1 through 4 testified that they had engaged in prostitution and most testified that they used illicit drugs with Defendant. Victim K.L. testified that she had lied to law enforcement on numerous occasions, which Defendant brought out during his lengthy cross-examination of K.L. on this point. Victim L.C. testified that she used drugs, had been arrested for prostitution, and had lied to law enforcement. (L.C. Test., ECF No. 190 at 21:1–10; 25:4–11; 31:24–25.) Victim T.V. testified she had been arrested and she gave law enforcement a false name and false identification. (T.V. Test., ECF No. 195 at 13:3–15; 32:13– 22.) Therefore, it is not apparent that Defendant's ability to refer to a rap sheet while cross-examining victims – if in fact the redactions actually prevented him from doing so – would have made a material difference in terms of impeaching their credibility.

The Court also notes Defendant failed to raise this specific issue – the redaction of victims/witnesses rap sheets – with the Court at any time during the trial, including pretrial motions or at the time the witnesses took the stand and testified. On January 17, 2014, Defendant submitted a pretrial motion, with an accompanying subpoena form requesting the criminal history of K.L. (Def.'s Motion to Suppress: Evidentiary Hearing, Discovery-Proof-Selective Prosecution, ECF No. 21; ECF No. 21-1.) To that motion, the Government responded it would provide Defendant with the criminal history of K.L. as well as for any witness it would call in the case; at the time of filing its opposition, March 3, 2014, the Government stated those materials had not yet been provided to the Defendant because of the possibility that they were not current. (Gov.'t Opp., ECF No. 32.) The Government also states in its opposition to the instant motions that it provided Defendant with "a written report of statements that K.L. made that were inconsistent with her previous statements to law enforcement." (Gov.'t Opp., ECF No. 211 at 3.)

On November 6, 2014, Defendant also filed a request for "any evidence that any

12

prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant." (Discovery Requ., ECF No. 89.)  To that motion, the Government responded it would provide Defendant with the relevant criminal histories, prior bad acts, inconsistent statements, etc. that would be relevant to impeachment.  (Gov.'t Resp., ECF No. 100.)

However, the Court does not locate within Defendant's pretrial filings, or at any point during trial, wherein Defendant raised the issue that he could not properly impeach witnesses based on the redactions in their criminal history rap sheets.  If Defendant had done so, this Court may have been able to cure any defect in the rap sheets but the Court never had the chance to do so.  For these reasons, the Court does not find that Defendant's stated grounds establish a basis for acquittal or for a new trial.

B.  Ineffective assistance of standby counsel

Defendant argues his standby counsel was ineffective.  The Court notes that Defendant stated his intent to represent himself in this matter on September 11, 2014, at which point, the Court engaged in a *Faretta* colloquy with Defendant.  At a status conference on October 23, 2014, Defendant confirmed with the Court that he wished to represent himself, but he also requested standby counsel; the Court again engaged in a *Faretta* colloquy with Defendant and granted his request for standby counsel.  Standby counsel was appointed on October 24, 2014. (ECF Nos. 74, 79, 80.)

At the hearing on the instant motions, on September 24, 2015, the Court held an in-camera review with Defendant and his standby counsel.  While maintaining the sanctity of the in-camera review and without disclosing any confidential communication between Defendant and standby counsel, the Court finds that standby counsel did adequately assist Defendant in preparing for trial and standby counsel did adequately advise Defendant during trial.  Defendant elected to represent himself.  "A defendant who elects to represent himself cannot thereafter complain that the quality of his defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834–35, n. 46 (1975).  The Court does not locate authority

13

for the proposition that these circumstances permit an ineffective assistance of counsel claim.  *See United States v. Cochrane*, 985 F.2d 1027, 1029, n. 1 (9th Cir. 1993) ("We need not decide if a *pro se* defendant may ever challenge the assistance of standby counsel whose assistance he has sought and received to conclude that the circumstances of this case do not warrant an exception to the rule articulated in *Faretta*").

C. Jury instructions

Defendant argues that the jury was improperly instructed for each count.  The Court construes the focus of this claim to be that the jury was not instructed it had to agree on the means by which sex trafficking was committed: force, or fraud, or coercion.  This argument applies to Counts 1, 2, and 4.  The Government was not required to prove force, fraud, or coercion for Counts 3 and 5, only that Defendant knew that the victim had "not attained the age of 18 years and [would] be caused to engage in a commercial sex act."  18 U.S.C. § 1591(a).

The parties briefed this issue prior to the Court's giving instructions.  (ECF Nos. 136 & 158.)  The Court declined to give a unanimity instruction with respect to the means of commission.  The Court does not find error in this regard.  *See Schad v. Arizona*, 501 U.S. 624, 631 (1991) ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone"[4]); *Richardson v. United States*, 526 U.S. 813, 817 (1999); *U.S. v. Baggett*, 251 F.3d 1087, 1096 (6th Cir. 2001); *U.S. v. Powell*, 2006 WL 1155947, at *1 (N.D. Ill. Apr. 28, 2006) (rejecting the argument that, with respect to charges that a victim was both under 18 and force, fraud, or coercion were used, "grouping the two means of committing an offense under § 1591 into a single count will create 'uncertainty as to whether the defendant's conviction is based on a unanimous jury decision'").

D. Composition of the jury

Defendant argues that he was unfairly prejudiced by the racial and gender composition of

---

[4] *Schad v. Arizona* held that the jury did not need to agree unanimously on a theory of felony murder vs. premeditated murder.  *Id.* at 630.

the jury which was constituted of either a majority of, or all, Caucasian members.  Defendant also argues the majority of the jurors were female.  Defendant argues he was prejudiced because of the introduction of racially-charged statements he made regarding white prostitutes.  For example, Defendant's moving papers cite to testimony from K.L. that Defendant stated he desired a "white bitch" or a "snow bunny" to work for him.  (*See* Def. Rep., ECF No. 221 at 7.)

The Government responds that to the extent Defendant raises a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), the *Batson* doctrine is inapplicable because the African American jurors that were dismissed from the jury pool were removed for cause, without objection by the Government or Defendant.  *See U.S. v. Blackman*, 66 F.3d 1572, 1575 n. 3 (11th Cir. 1995) ("no authority suggests *Batson* extends to the area of challenges for cause"); *United States v. Bergodere*, 40 F.3d 512, 515–16 (1st Cir. 1994) (citations omitted) ("the defendant must show that the challenge was peremptory rather than for cause, thus bringing into play the Supreme Court's admonition that peremptory challenges constitutes a jury selection practice that permits those to discriminate who are of a mind to discriminate").  The Court notes that were the *Batson* doctrine to apply, Defendant would need to identify a selection practice undertaken by the Government that establishes a prima facie showing of racial discrimination.  However, Defendant has not made the requisite showing under *Batson*.

The Court also construes Defendants' position to be that the empanelment of mostly Caucasian or all Caucasian jurors from a federal jury pool that does not fairly represent the community violates his right to an impartial jury.  "[I]n holding that petit juries must be drawn from a source fairly representative of the community, [the Supreme Court] impose[s] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition [citations]; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."  *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).  *See also United States v. Hernandez-Estrada*, 749 F.3d 1154, 1160–1165 (9th Cir. 2014) ("In sum, the

defendant must establish a prima facie case that the jury pool does not reflect a fair cross-section of the community"). However, Defendant's moving papers do not make a specific argument beyond the fact that the empaneled jury was either a majority or all Caucasian, and a majority were female.

E. Other arguments

The Court notes the following additional arguments raised by Defendant. The Court does not find these arguments establish that the evidence presented with respect to each count is insufficient to sustain a conviction, or that the evidence preponderates heavily against the verdict. *Shirley*, 884 F.2d at 1134; *Rush*, 749 F.2d at 1371.

1. Defendant argues that the Government told certain witnesses to testify they had been improperly influenced by Defendant's brother or other family members. The Government directs the Court to F.W.'s testimony that Defendant's brother tried to convince her not to show up at state court proceedings resulting from Defendant's assault on F.W. in Milpitas; K.L.'s testimony suggesting Defendant's brother tried to convince her not to incriminate the Defendant following his arrest in 2013; and evidence indicating Defendant attempted to send a "kite" from jail, in which he directed someone to get in touch with Victim T.V. and his brother to try to influence T.V.'s testimony. (Gov.'t Opp., ECF No. 211, Ex.'s 9 & 10; Gov.'t Trial Ex. 153.)

2. Defendant argues that the jury deliberations were rushed, and that the Court erred in permitting the jury to deliberate into the evening on December 23, rather than permit the jury to go home for the day. The duration of the trial was eleven days. The Court's minutes reflect that the jury began deliberation on the afternoon of December 23, 2014, at approximately 12:30 PM. Shortly after 4:00 PM, there began a break for approximately 40 minutes while recordings relevant to Count 5 were replayed for the jury in open court. The jury resumed deliberation thereafter. The Court received a note from the jury that it had reached a verdict, at approximately 5:50 PM that evening. (*See* Minutes, ECF No. 166.)

3. Defendant argues that Detective Stigerts presented false testimony and included false information in the affidavit supporting the initial complaint. Specifically, Defendant argues that

at the time Stigerts swore out the affidavit, which included K.L.'s statements that she was in Roseville or Rodeo at a particular time, Stigerts knew that information was false.  The Government responds that the affidavit summarizes what K.L. told Detective Stigerts.  The Government responds that the complaint affidavit was irrelevant to Detective Stigert's trial testimony, because Stigerts simply introduced certain individuals, explained certain investigative steps, and introduced the recorded conversations between L.B. and Defendant.  The Court notes that Defendant engaged in an extensive cross-examination of Detective Stigerts.  In fact, Defendant was able to impeach Detective Stigerts by showing that his grand jury testimony was different from his trial testimony in some respects.

4.  Defendant argues he was entitled to a bill of particulars.  Defendant's motion for a bill of particulars was denied at a motion hearing on August 14, 2014.

5.  Defendant argues that some or all of the offense conduct, with respect to each Count, did not occur in the Eastern District of California.  The Court notes the jury was instructed it had to find the offenses occurred in the Eastern District of California.

## CONCLUSION

For the foregoing reasons, the Court finds:

- Defendant's Motion for Acquittal (ECF No. 176) is DENIED.
- Defendant's Motion for a New Trial (ECF No. 175) as to Counts 1 through 4 is DENIED.
- Defendant's Motion for a New Trial (ECF No. 175) as to Count 5 is GRANTED.

Dated:  October 9, 2015

Troy L. Nunley
United States District Judge

17